The STATE of Ohio, Appellee,

v.

BUSH, Appellant.

[Cite as *State v. Bush* (1994), 97 Ohio App.3d 20.]

Court of Appeals of Ohio,
Meigs County.

No. 93 CA 516.

Decided Sept. 9, 1994.

22

[black redaction bars]

*John R. Lentes*, Meigs County Prosecuting Attorney, for appellee.

*William H. Safranek*, for appellant.

PETER B. ABELE, Judge.

This is an appeal from a judgment of conviction and sentence entered by the Meigs County Common Pleas Court finding Robert Bush, defendant below and appellant herein, guilty of passing a bad check in violation of R.C. 2913.11(C).

Appellant assigns the following errors:

First Assignment of Error:

"The court erred in failing at the pretrial held October 16, 1991 to inquire fully into the circumstances which had resulted in the appellant being unable to obtain counsel since the arraignment held September 16, 1991."

Second Assignment of Error:

"The court erred in failing on the date of trial, November 18, 199[1], to inquire fully before the commencement of trial as to why the appellant had been unable to obtain counsel."

Third Assignment of Error:

"The court erred at sentencing on August 18, 1993 in summarily rejecting appellant's on record requests for the appointment of counsel and in ruling that appellant had waived any right he had to the appointment of counsel."

Fourth Assignment of Error:

"The prosecuting attorney erred during closing argument, commiting [*sic*] misconduct mandating reversal."

Fifth Assignment of Error:

"The court erred in giving an ambiguous instruction which was unclear as to whether notice of dishonor of a check created a rebuttable presumption or a conclusive presumption."

Sixth Assignment of Error:

"The court erred in including in its instructions an instruction on 'purpose' which was unnecessary and calculated to confuse the jury."

On December 31, 1988, appellant wrote a $6,877.50 check without having sufficient funds in his account to cover that amount. On August 26, 1991, the Meigs County grand jury indicted appellant on one count of passing a bad check in violation of R.C. 2913.11(C), a third degree felony.

On November 18, 1991, the court held a jury trial. The jury found appellant guilty as charged in the indictment. Appellant failed to appear at the first scheduled sentencing hearing. Consequently, the trial court issued a bench warrant for appellant's arrest. On August 18, 1993, nearly two years after his conviction, appellant appeared for sentencing. The court sentenced appellant to two years in a state penal institution.

Appellant filed a timely notice of appeal.

I

■ Appellant's first three assignments of error involve the fact that he represented himself during the proceedings below. In his first and second assignments of error, appellant asserts the trial court erred by failing to inquire fully concerning why appellant had been unable to obtain counsel. In his third assignment of error, appellant asserts the trial court erred at the sentencing hearing by rejecting appellant's request for counsel and by stating that appellant

had waived his right to counsel. We will address appellant's first three assignments of error jointly.

In support of these assignments of error, appellant cites *State v. Tymcio* (1975), 42 Ohio St.2d 39, 71 O.O.2d 22, 325 N.E.2d 556, for the proposition that a trial court has a duty "to inquire fully into the circumstances impinging upon an accused's claimed inability to obtain counsel." *Id.*, at paragraph three of the syllabus. We note that in *Tymcio* the court wrote as follows:

"We hold that a preliminary determination of indigency can not be permitted to foreclose a redetermination of eligibility for assigned counsel, when, at a subsequent stage of a criminal proceeding, new information concerning the ability or inability of the accused to obtain counsel becomes available. It is then the duty of the trial court to inquire fully into the circumstances impinging upon the defendant's claimed inability to obtain counsel * * *." *Id.*, 42 Ohio St.2d at 44, 71 O.O.2d at 24–25, 325 N.E.2d at 560.

When new information becomes available concerning the ability of an accused to obtain counsel, the court must inquire fully into the circumstances. See *State v. Purnhagen* (Feb. 17, 1994), Adams App. No. 93–CA–551, unreported, at fn. 3, 1994 WL 59263; *State v. Baisden* (May 28, 1991), Jackson App. No. 612, unreported, 1991 WL 99630.

We note that during the September 16, 1991 arraignment hearing, appellant and the court had the following discussions on the record:

"JUDGE CROW: You have a right to have retain[ed] counsel in this case. So you wish to have retained counsel?

"BOB BUSH: Not at this moment, Your Honor.

"JUDGE CROW: All right. Can you afford to retain counsel?

"BOB BUSH: Yes, Your Honor.

" * * *

"JUDGE CROW: * * * Who do you anticipate getting as an attorney, or do you know?

"BOB BUSH: Your Honor, if it would please the Court, at this time I ahh . . . have two (2) in mind, but don't know which one I will call upon."

During the October 16, 1991 pretrial hearing, appellant and the court had the following discussions on the record:

"JUDGE CROW: Mr. Bush you have told us that you run a construction company or a maintenance company and you are in partnership with your son . . . and the company made forty-two thousand dollars ($42,000.00) last year. Is that correct?

"BOB BUSH: That is approximate, Your Honor, yes.

"JUDGE CROW: As is your situation similar this year as it was last year?

"BOB BUSH: Yes, Your Honor ... hopefully a little more.

" * * *

"JUDGE CROW: Do you think you will have time to get an attorney by then [November 18, 1991], Sir?

"BOB BUSH: Yes, Sir. Ample time, Your Honor.

"JUDGE CROW: All right. Now, don't be coming in here ahh * * * a week before trial and say you don't have any attorney.

"BOB BUSH: That won't be the case, Your Honor.

"JUDGE CROW: All right. So you will have no problem getting an attorney. Is that correct?

"BOB BUSH: Yes, Sir, Your Honor."

During both hearings, appellant assured the trial court that he would have no problem obtaining counsel.

Rather than retaining an attorney to represent him at the November 18, 1991 trial, appellant represented himself. The record transmitted on appeal demonstrates that appellant gave the trial court no new information concerning his ability or inability to obtain counsel. Appellant did not request the court to assist him in obtaining counsel. Appellant did not request another continuance to enable him to obtain counsel. Appellant did not alert the trial court to any obstacles he might have faced when attempting to obtain counsel.

Under the circumstances of the case *sub judice,* we find no merit to appellant's first and second assignments of error. At both the arraignment and the pretrial hearings, the court asked appellant about his plans to obtain counsel. Appellant unambiguously told the court that he was able to obtain counsel. The court granted appellant's request for a continuance to enable him more time to obtain counsel. Appellant did not request any further continuances. Appellant remained silent on the issue at trial. We find the trial court correctly concluded that appellant waived his right to assistance of counsel at trial.

▮ In his third assignment of error, appellant argues that the trial court erred by not granting the requests he made for counsel at the August 18, 1993 sentencing hearing. The record reflects the following discussion between the trial court and appellant:

"JUDGE CROW: It appears that he did not show up at the sentencing date. Mr. Bush, why didn't you show up?

"BOB BUSH: In response to that, Your Honor, if the Court please, my constitutional rights were grossly violated. I was denied the right of an attorney and at this time I still ask for another one * * * that's why I didn't show up * * * I've been trying to get the money together to hire me an attorney * * * to get this thing resolved.

"JUDGE CROW: It is my understanding that you waived your right to an attorney and tried this case yourself. * * *

"BOB BUSH: * * * I would the presence of an attorney before I am sentence. [*Sic.*]

"JUDGE CROW: You have waive [*sic*] that right as far as the Court is concerned. * * *"

We agree with appellant that the trial court erred at the sentencing hearing by summarily rejecting appellant's request for appointment of counsel. When appellant stated that he had "been trying to get the money together" to hire an attorney, appellant gave the court new information concerning his ability or inability to retain counsel. Since the sentencing hearing was a "subsequent stage of a criminal proceeding," *Tymcio, supra,* required the trial court to inquire fully into the circumstances impinging upon appellant's newly claimed inability to obtain counsel.

Accordingly, based upon the foregoing reasons, we overrule appellant's first and second assignments of error and we sustain appellant's third assignment of error.

In accordance with our disposition of the third assignment of error, we reverse and remand this cause to the trial court to conduct a hearing to inquire fully into the circumstances impinging upon appellant's claimed inability to obtain counsel at the time of the sentencing hearing below. If the trial court determines, consistent with this opinion, that appellant was entitled to appointed counsel at the time of the sentencing hearing below, then the court must conduct a new sentencing hearing. The new sentencing hearing shall include a determination of appellant's ability or inability, at the time of the new sentencing hearing, to obtain counsel. If the court determines that appellant was not entitled to appointed counsel at the time of the sentencing hearing below, then the court need not conduct a new sentencing hearing, but may reenter the judgment of conviction and sentence.

## II

In his fourth assignment of error, appellant asserts the prosecutor committed misconduct during the closing arguments by making the following comments:

"And * * * if he denies that, ladies and gentlemen, he's lying * * * but he's already a thief, so I suppose he'll lie about that too."

" * * *

"Well, Ladies and Gentlemen, the Defendant has succeed[ed] in being able to not talk to you, but testify here in closing arguments. He hasn't subjected himself to cross-examination. * * * "

Appellant also contends the prosecutor committed misconduct by misstating the law by implying, in the following comment, that failure to pay a bad check after notice of dishonor creates a conclusive, rather than rebuttable, presumption of knowledge that the check would be dishonored:

"Anybody can write a check * * * or a bad check; anyone can make a wrong notation or not get the deposit in quick enough and the checks * * * the bank sends you back sends it back with NSF on it * * * and that's not a crime. It becomes a crime if you don't do something about it. * * * "

First, we note appellant raised no objection at trial to the first and third comments quoted above. Crim.R. 52(B), the "plain error" rule, states that although a defendant may have failed to raise a timely objection to an error affecting a substantial right, courts may notice the error. Crim.R. 52(B) provides:

"Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

The Ohio Supreme Court has frequently limited the application of the plain error rule. In *State v. Landrum* (1990), 53 Ohio St.3d 107, 111, 559 N.E.2d 710, 717, the court quoted and followed *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, as follows:

" 'Notice of plain error under Crim.R. 52(B) is to be *taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.*' " (Emphasis added.)

The plain error rule should not be invoked unless, but for the error, the outcome of the trial would clearly have been otherwise. See *State v. Underwood* (1983), 3 Ohio St.3d 12, 3 OBR 360, 444 N.E.2d 1332; *State v. Cooperrider* (1983), 4 Ohio St.3d 226, 4 OBR 580, 448 N.E.2d 452; *State v. Wolery* (1976), 46 Ohio St.2d 316, 75 O.O.2d 366, 348 N.E.2d 351, certiorari denied (1976), 429 U.S. 932, 97 S.Ct. 339, 50 L.Ed.2d 301. We may invoke the plain error rule only if we find (1) that the prosecutor's comments denied appellant a fair trial, (2) that the circumstances in the instant case are exceptional, and (3) that reversal of the judgment below is required to prevent a manifest miscarriage of justice.

■ Second, we note that the trial court sustained appellant's objection to the prosecutor's comment concerning appellant's failure to subject himself to cross-examination. When sustaining appellant's objection, the trial court instructed the jury to disregard the comment. During the general jury instructions, the trial court instructed the jury that a defendant has a constitutional right not to testify, and the fact that appellant did not testify "must not be considered for any purpose whatsoever." We must presume the jury followed the trial court's instructions and disregarded the prosecutor's comment concerning appellant's failure to subject himself to cross-examination. See *State v. Murphy* (1992), 65 Ohio St.3d 554, 584, 605 N.E.2d 884, 907; *Pang v. Minch* (1990), 53 Ohio St.3d 186, 559 N.E.2d 1313, paragraph four of the syllabus.

■ Last, we note that the test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant. *State v. Smith* (1984), 14 Ohio St.3d 13, 14, 14 OBR 317, 318–319, 470 N.E.2d 883, 885. The effect of counsel's misconduct must be considered in light of the whole record. See *State v. Durr* (1991), 58 Ohio St.3d 86, 94, 568 N.E.2d 674, 683; *State v. Maurer* (1984), 15 Ohio St.3d 239, 266, 15 OBR 379, 401–403, 473 N.E.2d 768, 792–93; *State v. Jackson* (June 13, 1991), Jackson App. No. 633, unreported, 1991 WL 110221. A prosecutor's misconduct at trial can be made a ground of reversible error only if appellant was found to have been denied a fair trial. *Durr, supra.*

■ In the case at bar, it is clear beyond a reasonable doubt that absent the prosecutor's remarks, appellant would still have been found guilty. See *State v. Landrum, supra*, 53 Ohio St.3d 107, 559 N.E.2d 710. Uncontroverted evidence presented at trial established that appellant wrote a bad check with knowledge that he had insufficient funds in his account to cover the check. When the evidence presented at trial is taken as a whole, the prosecutor's comments, if error, constitute merely harmless error. In conclusion, we find the prosecutor's comments did not deny appellant a fair trial.

Accordingly, based upon the foregoing reasons, we overrule appellant's fourth assignment of error.

## III

■ In his fifth assignment of error, appellant asserts that the trial court erred by giving what appellant contends is an ambiguous jury instruction concerning whether notice of dishonor of a check creates a rebuttable presumption or a conclusive presumption. In his sixth assignment of error, appellant asserts the trial court erred by including an instruction on purpose in the jury instructions. We will address these two assignments of error jointly.

We note that appellant failed to object at trial to either jury instruction. Crim.R. 30(A) provides that a party may not assign as error the failure to give an instruction unless the party objects before the jury retires to deliberate. See *State v. Underwood, supra,* 3 Ohio St.3d 12, 3 OBR 360, 444 N.E.2d 1332.

Assuming, *arguendo,* the jury instructions constituted error, we do not believe the circumstances in the case *sub judice* are sufficiently exceptional to require invocation of Crim.R. 52(B), the "plain error" rule, to prevent a manifest miscarriage of justice. See our discussion of the plain error rule under appellant's fourth assignment of error, *supra.*

Accordingly, based upon the foregoing reasons, we overrule appellant's fifth and sixth assignments of error.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

STEPHENSON and GREY, JJ., concur.